## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW NATHANIEL BINGHAM II, | : | Civil No. 3:21-cv-1697 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONAL OFFICER KNORR, | : | |
| CORRECTIONAL OFFICER CEBRICK, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Andrew Nathaniel Bingham ("Bingham"), an inmate who was housed at all relevant times at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 50). Named as Defendants are Correctional Officer Kyle Knorr and Correctional Officer Grant Cebrick. Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 67). For the reasons set forth below, the Court will deny the motion.

I.    **Statement of Undisputed Facts[1]**

On November 19, 2019, at approximately 1:15 p.m., at SCI-Dallas, Defendants Knorr

and Cebrick arrived at Bingham's cell in the Restrictive Housing Unit ("RHU").  (Doc. 68 ¶

1).  While Bingham was still in his cell, Defendant Knorr applied handcuffs to Bingham's

wrists.  (*Id.* ¶ 2).  Once Bingham was handcuffed, the cell door was opened, and he was

allowed to exit his cell.  (*Id.* ¶ 3).  Both Defendants began escorting Bingham to the RHU

hearing room for his misconduct hearing.  (*Id.* ¶ 4).  Once Bingham and Defendants

reached the bottom of a set of stairs and entered the hallway near the RHU hearing room,

the parties dispute what happened next.  (*Id.* ¶ 5).  Defendants contend that Bingham

slipped his right hand from his handcuffs and turned and struck Defendant Knorr in the

head.  (*Id.*).  Bingham contends that Defendants purposely assaulted him in an area of the

prison that was not covered by video surveillance cameras.  (Doc. 74 ¶ 16).  Defendants

assert that they immediately attempted to gain control of Bingham by placing him up against

the wall so that they could place him back in handcuffs.  (Doc. 68 ¶ 6).  They further assert

that Bingham continued to resist both Defendants preventing them from gaining compliance.

---

[1]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil
Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered
paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF
COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material
facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying
genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the
parties' Rule 56.1 statements of material facts.  (Docs. 68, 74).  To the extent the parties' statements are
undisputed or supported by uncontroverted record evidence, the Court cites directly to the statements of
material facts.

(*Id.* ¶ 7). Defendants then placed Bingham on the ground in attempt to gain compliance. (*Id.* ¶ 8). They state that Bingham continued to resist both Defendants and began spitting at them. (*Id.* ¶ 9). Defendant Knorr held Bingham's face to the ground to prevent him from spitting on the Defendants while they attempted to reapply the handcuffs. (*Id.* ¶ 10). Defendant Cebrick placed his knee into the small of Bingham's back to gain control and to reapply the handcuffs. (*Id.* ¶ 11). The parties dispute whether Defendants used the least amount of force necessary to gain compliance from Bingham and reapply handcuffs. (*Id.* ¶ 12; Doc. 74 ¶ 4). Once Bingham was handcuffed, Defendants contend that they attempted to stand him up when Bingham continued to use his body weight to resist the Defendants' efforts for him comply. (Doc. 68 ¶ 13). Defendants placed Bingham on his feet and then escorted him to the RHU and placed him in a holding cell. (*Id.* ¶ 14).

Lieutenant Williams and Sergeant Fitzgerald were notified of the incident. (*Id.* ¶¶ 15, 16). Defendants contends that Sergeant Fitzgerald responded and placed Bingham on handheld camera while he was still in the holding cell. (*Id.* ¶ 17). Bingham disputes whether he spoke to Sergeant Fitzgerald. (Doc. 74 ¶ 26). Correctional Officers Garcia and Kehl then escorted Bingham to the medical department for assessment. (Doc. 68 ¶ 18). Medical staff assessed Bingham for facial, head, and rib trauma, and took photographs. (*Id.* ¶ 19). He was transported to Geisinger Wyoming Valley Hospital for a follow-up assessment and was diagnosed with a right periorbital fracture. (*Id.* ¶¶ 19, 20). Bingham retuned to SCI-Dallas on November 19, 2019, and was admitted to the infirmary. (*Id.* ¶ 20).

On November 29, 2019, the medical department treated Bingham and it was noted that no surgery was recommended and that a follow-up with ophthalmology would be scheduled. (*Id.* ¶ 21). Ophthalmology assessed Bingham and it was noted that no treatment was necessary for his small orbital floor fracture, and it was noted that Bingham had "Healthy eyes." (*Id.* ¶ 22). Defendants were also medically assessed. (*Id.* ¶ 23). Defendant Knorr suffered injuries to his left eye, right hand, and left shoulder. (*Id.* ¶ 24). Defendant Cebrick suffered pain in his left shoulder. (*Id.* ¶ 25). Bingham disputes the extent of Defendants' injuries and contends that their injuries were self-inflicted. (Doc. 74 ¶¶ 9, 10, 22).

On November 19, 2019, Bingham was issued misconduct number D248900 for his assault on Defendant Knorr. (Doc. 68 ¶ 26). At his misconduct hearing, Bingham was found guilty of assaulting Defendant Knorr and received ninety (90) days of disciplinary custody. (*Id.* ¶ 27).

On December 1, 2019, Bingham filed Grievance Number 838901 relating to the November 19, 2019 incident. (*Id.* ¶ 28, Doc. 74 ¶ 14). In the grievance, Bingham alleges that Defendants used excessive force against him resulting in bodily injury and cruel and unusual punishment. (Doc. 68 ¶ 29). He also claims that during the incident, he called out loudly for help and that Defendants yelled at him and stated, "I'll kill you." (*Id.* ¶ 30). Bingham further claims that following the incident, Sergeant Fitzgerald returned to the RHU

4

and upon seeing Bingham said, "Oh my God. What happened" and Bingham responded, "You know."  (*Id.* ¶ 31).

On September 17, 2020, upon completion of the official abuse investigation by prison authorities, an initial grievance review response was issued to Bingham.  (*Id.* ¶ 32). Bingham was informed that after the investigation, it was determined that his claims were unsubstantiated and without merit.  (*Id.* ¶ 33).  Bingham proceeded to appeal the denial; however, the initial grievance denial was upheld, and his allegations were deemed unsubstantiated.  (*Id.* ¶ 34).

During the investigation, Defendants contend that Bingham did not initially complain to prison authorities that he was assaulted or abused.  (*Id.* ¶ 35).  However, the SCI-Dallas security office immediately recommended that an abuse investigation be initiated.  (*Id.*). Security Captain Brozowski investigated the November 19, 2019 unplanned use of force incident.  (*Id.* ¶ 36).  As part of his investigation, Security Captain Brozowski conducted four interviews with staff members, and reviewed surveillance footage from the range cameras, DC-121 Extraordinary Occurrence Forms, medical reports, misconduct reports, and the Extraordinary Occurrence Report.  (*Id.* ¶¶ 37, 38).  Captain Brozowski ultimately determined that staff acted appropriately, they did not use excessive force, and Bingham's allegations of excessive force were unsubstantiated.  (*Id.* ¶ 39).  Lieutenant Beth Evans from the Bureau of Investigations and Intelligence ("BII") reviewed and affirmed Captained Brozowski's findings.  (*Id.* ¶ 40).  Bingham was given an opportunity to be interviewed and provide a

5

written statement regarding Captain Brozowski's investigation. (*Id.* ¶ 41). Defendants

contend that when Officers Silva and Maciejczak arrived at Bingham's cell to escort him to

be interviewed for the investigation, Bingham stated, "that's dead" and laid back down on

his bunk. (*Id.* ¶ 42). Bingham contends that Officers Silva and Maciejczak issued a

fabricated report. (Doc. 74 ¶ 20).

   The parties dispute whether there was surveillance video of the unplanned use of

force incident. (Doc. 68 ¶ 43; Doc. 74 ¶ 21). Defendants maintain that there are no

cameras in the location where the incident occurred. (Doc. 68 ¶ 43). Surveillance video

from the range was secured and it shows portions of the escort that occurred prior to and

subsequent to the unplanned use of force incident. (*Id.* ¶ 44). Defendants contend that the

surveillance video aligns with their version of events and shows Bingham being handcuffed

and escorted by Defendants from his cell to the stairwell leading to the RHU hearing room.

(*Id.* ¶ 45). The video also shows the Defendants escorting Bingham, in handcuffs, down the

stairs to the RHU hearing room. (*Id.* ¶ 46). The video then shows Defendants walking

Bingham back up the stairs while holding on to Bingham to retain control. (*Id.* ¶ 47).

   Defendant Cebrick was interviewed, provided a written statement, and denied

Bingham's allegations. (*Id.* ¶¶ 48, 49). Defendant Cebrick reported that he was escorting

Bingham to the Hearing Examiner's Office when Bingham slipped his right hand out of his

handcuffs, spun around, and punched Defendant Knorr in the face. (*Id.* ¶ 50). Defendant

Cebrick reported that Bingham was placed against the wall to gain compliance, but he

continued to attempt to strike the Defendants and was then placed on the floor.  (*Id.* ¶ 51).

Once Bingham was on the floor, Defendant Cebrick placed his knee on his back to reapply

the handcuffs.  (*Id.* ¶ 52).  Defendant Cebrick reported that he and Defendant Knorr did not

punch, kick, strike, or threaten Bingham.  (*Id.* ¶ 53).  Defendant Cebrick also reported that

Defendants used the least amount of force necessary to gain control of Bingham.  (*Id.* ¶ 46).

Defendant Knorr was interviewed, provided a written statement, and denied

Bingham's allegations.  (*Id.* ¶ 56).  Defendant Knorr reported that he was escorting Bingham

to the Hearing Examiner's Office for a hearing when Bingham slipped his hand out of the

handcuffs and punched him in the face.  (*Id.* ¶¶ 57, 58).  Defendant Knorr reported that he

placed Bingham against the wall to attempt to restrain him and that Bingham continued to

resist.  (*Id.* ¶ 59).  Defendant Knorr reported Bingham was then taken to the floor in an

attempt to gain compliance, but Bingham continued to resist and was attempting to spit on

the Defendants.  (*Id.* ¶ 60).  Defendant Knorr reported that once compliance was gained

and Bingham was handcuffed, Bingham was placed in a holding cell and taken to medical

for an evaluation.  (*Id.* ¶ 61).

Hearing Examiner, Charles McKeown, was interviewed by Captain Brozowski and

provided a written statement.  (*Id.* ¶ 62).  Hearing Examiner McKeown indicated that he

heard a disturbance outside of his office, located in the RHU basement at SCI-Dallas, and

went out of his office to observe.  (*Id.* ¶ 63).  Bingham contends that the disturbance was his

screams for help.  (Doc. 74 ¶ 24).  Hearing Examiner McKeown indicated that he observed

Bingham being assisted to his feet by Defendants. (Doc. 68 ¶ 64). Hearing Examiner McKeown indicated that Bingham appeared to be using his weight to resist the officers' attempts to control his movement. (*Id.* ¶ 65). Bingham maintains that he was not using his weight to resist the Defendants. (Doc. 74 ¶ 25). Hearing Examiner McKeown indicated the entire incident lasted no more than a few seconds and that he did not witness the Defendants punch, kick, or make any threatening statements to Bingham. (Doc. 68 ¶ 66).

Sergeant Kenneth Fitzgerald was interviewed by Captain Brozowski and provided a written statement. (*Id.* ¶ 67). Sergeant Fitzgerald reported that on November 19, 2019, he was assigned to the RHU. (*Id.* ¶ 68). Sergeant Fitzgerald reported that approximately 1:05 p.m., he went to the I.D. room and when he returned to the RHU at 1:20 p.m., he observed Bingham in the holding cell. (*Id.* ¶ 69). Sergeant Fitzgerald reported that he did not have any conversation with Bingham and Bingham did not indicate to him that he had been assaulted. (*Id.* ¶ 70).

As a result of the November 19, 2019 incident involving Defendants, Bingham was charged criminally in Luzerne County with aggravated assault and aggravated harassment by a prisoner. (*Id.* ¶ 71). The facts alleged that on November 19, 2019, at SCI-Dallas, Bingham assaulted, attempted to assault, and resisted Defendants while attempting to spit on them. (*Id.* ¶ 72). On December 16, 2021, Bingham pled guilty to assaulting, attempting to assault, resisting, and spitting at Defendants. (*Id.* ¶ 73). At the time of his guilty plea, Bingham, through counsel, stipulated to the facts of the case. (*Id.* ¶ 74). Bingham, through

8

counsel, also submitted a plea form dated December 16, 2021, containing an acknowledgment and signature endorsement that he understood the "affidavit/factual basis" for the charge he plead guilty to.  (*Id.* ¶ 75).  Bingham states that he signed the guilty plea agreement to receive the return of his television.  (Doc. 74 ¶ 27).  The facts forming the basis for Bingham's guilty plea are detailed in the criminal complaint and the criminal information.  (Doc. 69 ¶ 76).  The affidavit of probable cause states that Bingham slipped out of his handcuffs, assaulted Defendant Knorr, continued to attempt to assault both Defendants, and resisted Defendants while spitting at them.  (*Id.* ¶ 77).  The facts which Bingham stipulated to in pleading guilty do not state that either Defendant punched, kicked, or threatened him.  (*Id.* ¶ 78).  The affidavit of probable cause and criminal information do not mention excessive force or abuse by either Defendant against Bingham.  (*Id.* ¶ 79).  Bingham was sentenced to thirty (30) to sixty (60) months in state prison for his assault on Defendants.  (*Id.* ¶ 80).

## II.  Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

### A.      The *Heck* Bar does not Apply to Bingham's Excessive Force Claim

Defendants argue that Bingham's § 1983 claim is barred by *Heck v. Humphrey*, 512

U.S. 477 (1994).  In *Heck*, the United States Supreme Court held that a plaintiff may not

recover damages under § 1983 if doing so would imply the invalidity of a prior criminal

conviction. The Supreme Court explained that:

> [W]hen [an individual] seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would necessarily imply
> the validity of his conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate the conviction or sentence has
> already been invalidated.  But if the district court determines that the plaintiff's
> action, even if successful, will not demonstrate the invalidity of any
> outstanding criminal judgment against the plaintiff, the action should be
> allowed to proceed.

*Heck*, 512 U.S. at 487.  The *Heck* doctrine does not create a *per se* bar to a claim of

excessive force even where the plaintiff was previously convicted of resisting arrest, assault,

or similar crime arising out of the same incident.  *Garrison v. Porch*, 376 F. App'x 274, 277-

78 (3d Cir. 2010) (simple assault conviction did not bar excessive force claim); *Lora-Pena v.

FBI*, 529 F.3d 503, 506 (3d Cir. 2008) (resisting arrest and assault conviction did not bar

excessive force claim); *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) (resisting

arrest conviction did not bar excessive force claim).  The Third Circuit Court of Appeals has

explained that where a "reasonable juror, considering the totality of the circumstances,

could find that the arrestee resisted arrest" or assaulted the arresting officer, "but was still

subjected to an unreasonable excessive level of force" by the responding officer, plaintiff's

claim was not barred by *Heck*.  *Garrison*, 376 F. App'x at 277-78 (citing *Nelson*, 109 F.3d at

146); *Lora-Pena*, 529 F.3d at 506.

Here, Bingham pled guilty to assaulting, attempting to assault, resisting, and spitting

at Defendants.  (Docs. 70-15, 70-16).  Bingham alleges that more than the necessary

amount of force was used to subdue him when escorting him to his misconduct hearing.

Under the facts presented in this case, there remains a possibility that a reasonable jury

could find that the Defendants responded to Bingham's physical resistance to their efforts

with excessive force, especially after they were assaulted.  *Garrison*, 376 F. App'x at 277-

78; *Lora-Pena*, 529 F.3d at 506; *Nelson*, 109 F.3d at 146.  Because this possibility is not

foreclosed by Bingham's conviction for aggravated assault, a finding that Defendants used

excessive force against Bingham when escorting him to a misconduct hearing would not necessarily imply the invalidity of Bingham's conviction for aggravated assault, and thus the *Heck* rule does not apply. The Court denies summary judgment on this issue.

### B.    Eighth Amendment Excessive Force Claim

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the use of force is excessive, courts are instructed to examine: (1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; and (4) whether the force was applied in a good faith effort to maintain and restore order. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quotation marks and citation omitted). As with any Eighth Amendment violation, Plaintiff must prove the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). The "core judicial inquiry" is not

whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*per curiam*); *see also Hudson*, 503 U.S. at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins*, 559 U.S. at 37.

Bingham claims that a genuine issue of material fact exists as to whether Defendants used unreasonable force in violation of his Eighth Amendment rights. The Court agrees that, taking the facts in the light most favorable to Bingham, a reasonable jury could determine that Defendants used unreasonable force while escorting him to his misconduct hearing.

Prior to the handheld camera and video surveillance footage from the range, Bingham and the Defendants have two vastly different accounts of what happened on November 19, 2019. Bingham contends that when the Defendants were escorting him down the stairs to his misconduct hearing, Knorr grabbed his elbow and the back of his neck, and Cebrick intentionally tripped him, causing him to fall. He claims that Defendant Knorr slammed his face and head into a block wall causing his nose and right eye to immediately bleed. Defendant Cebrick then punched him on the right side of his face and head while Defendant Knorr punched him on the left side of his face and head. Defendant Cebrick then proceeded to kick him on his back, side, and leg, and Defendant Knorr kicked

him in the back and continued to punch him in the back of the head.  Bingham contends that Defendants yelled threats at him during the incident, and that he screamed for help.  He states that he lost consciousness during this incident.  Bingham was transported to the emergency room at Geisinger Wyoming Valley Hospital where he was informed that he suffered a fractured eye socket, bruised ribs, bruising on his back, side, and leg, a head contusion, severe swelling on his face, and a broken nose.  Bingham argues that he did not pose a threat warranting the level of force used against him.

In contrast, Defendants contend that Bingham initiated an unprovoked physical attack on Defendant Knorr by slipping out of his handcuffs and punching him in the head. They contend that Bingham continued to cause, and attempt to cause, bodily injury to the Defendants by physically resisting and spitting at them as they tried to gain compliance. Defendants assert that Bingham's aggressive attack warranted the force they used to subdue him.

At this point, taking the facts in the light most favorable to the non-movant, a reasonable jury could find Bingham's version of events credible and conclude that Defendants used excessive force in violation of the Eighth Amendment during the escort to the misconduct hearing.  The fact that Bingham assaulted staff during this altercation does not negate, and is not inconsistent with, the possibility that Defendants used excessive force against him.  The Court accordingly declines to grant summary judgment on the excessive force claim.

IV.     **Conclusion**

The Court will deny Defendants' motion (Doc. 67) for summary judgment.  A

separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: August __10__, 2023